A90A1837. IN THE INTEREST OF D. R. C., a child.
(401 SE2d 754)

McMurray, Presiding Judge.

This is an appeal by the natural mother from an order of the juvenile court terminating her parental rights to her minor son. The case has been before this Court on appeal from a previous termination order which was reversed in *In the Interest of D. R. C.,* 191 Ga. App. 278 (381 SE2d 486). This Court held therein that the State's petition failed to provide any of the facts upon which it was predicated, and also failed to comply with OCGA § 15-11-82 (c) in failing to state clearly that the effect of the order of termination of parental rights would be as set forth in OCGA § 15-11-80. Upon remand, the Georgia Department of Human Resources filed the instant petition for termination of appellant's parental rights, which was granted after a hearing on January 18, 1990, and from which the present appeal is brought. *Held:*

1. Appellant contends that the State failed to adequately notify her as to what allegations were being made to prove her "parental misconduct or inability" as well as the child's current "deprived" condition. She argues that while the petition makes sweeping references to past facts from the previous transcript, it does not show of what parental misconduct she is presently guilty.

On January 10, 1990, the juvenile court conducted a pretrial hearing, with the attorneys for the Department of Human Resources, appellant and the child's guardian ad litem present, at which it was stipulated that the transcript from the previous trial would be admissible. After considering the petition and appellant's answer and hearing argument of counsel, the court found that the petition was legally sufficient.

The petition alleged that appellant was a habitual abuser of Dilaudid, a strong painkiller similar to synthetic heroin. Her child was born on February 8, 1985, and held for some time for observation at the hospital for possible drug withdrawal problems. He was placed in the custody of the Department of Human Resources in August 1985 and put in emergency foster care because appellant was in prison. Appellant regained custody in September 1985, but the child was placed again in foster care in February of 1986 when appellant was incarcerated again. Appellant was incarcerated at the time the child initially

came into the custody of the Department of Human Resources, and at all three custody review sessions. Her only contact with the child since February of 1986 occurred on December 30, 1986, when she abducted the child after having twice made appointments to visit him which she failed to keep. She also failed to appear in the United States District Court for sentencing on that date. The Department of Human Resources obtained a warrant for her arrest for interference with custody and notified all the police agencies, but they did not locate the child until some ten months later. He had been living with a series of appellant's acquaintances who did not know her whereabouts. The child was found with a stranger with whom he had been left, who did not even know his name, except through a television news segment concerning "an unknown abandoned child" in need of identification.

At the time the petition was filed the mother was in federal prison in Kentucky, although two days before the hearing she was transferred to a halfway house located in Atlanta to serve the remainder of her sentence. She has been convicted of a plethora of drug related crimes and testified at the hearing that while she was trying to rehabilitate herself, she would always be addicted to drugs. Neither she nor the child's putative father supported the child while he was in the temporary custody of the Department of Human Resources, nor paid any child support.

We conclude that the petition contained specific allegations of facts indicating both appellant's history of misconduct and deprivation of the child as well as her present inability to parent, which was supported by the evidence presented at the hearing and more than met the requirements of OCGA § 15-11-25. "There being clear and convincing evidence in the record to support the juvenile court's termination of appellant's parental rights, this enumeration is without merit. [Cit.]" *In the Interest of J. A. B.*, 189 Ga. App. 79 (1), 80 (374 SE2d 839). Accord *Wynn v. Dept. of Human Resources*, 149 Ga. App. 559 (1) (254 SE2d 883).

2. Appellant complains that the juvenile court erred in admitting inadmissible hearsay testimony from a psychologist regarding statements made to her by the child. She argues that if the child's statements were admissible under OCGA § 24-3-16 as an expression of child abuse, it was necessary for the judge to conduct a hearing to determine whether there existed any indicia of reliability surrounding the statements made by the child, which was not done. We do not agree. "The Georgia Supreme Court, in *Reynolds v. State*, 257 Ga. 725 (2) (363 SE2d 249), decided this issue adversely to appellant, by holding that 'OCGA § 24-3-16 does not require a hearing to determine "indicia of reliability" be held prior to receiving the testimony . . . (and) we cannot say that failure to do so in this case was error. . . .'

The trial [court] is presumed to know the law [cit.] and presumed to 'faithfully and lawfully (perform) the duties devolving upon it by law.' [Cit.] Hence, implicit in any ruling by a trial court is that [it] made the necessary finding of admissibility before admitting such evidence." *Windom v. State*, 187 Ga. App. 18, 19 (2) (369 SE2d 311).

3. Appellant asserts that in the termination hearing the court improperly considered its previous orders finding deprivation, because these orders were based upon written allegations without support from any sworn testimony and without a hearing on temporary custody. She protests that the court went beyond consideration of mere records or ministerial orders on file with the court as approved in *Petkas v. Grizzard*, 252 Ga. 104, 108 (312 SE2d 107), and incorporated a previous order based upon facts known only to the court to which appellant had no opportunity to respond.

The findings that appellant objects to were appended by a nunc pro tunc order to a previous deprivation order from which they had been inadvertently omitted by a clerical error. Appellant made no objection to the correction and did not appeal the order either before or after it was amended, but now insists that a second evidentiary hearing should have been held prior to correction of the order. However, "any objection on this ground has been waived. [Cits.]" *In the Interest of J. L. Y.*, 184 Ga. App. 254, 258 (3) (361 SE2d 246).

4. Appellant challenges the sufficiency of the evidence to warrant termination of her parental rights, contending that there was no showing that the child was presently deprived or that such deprivation was likely to continue. The juvenile court stated in its termination order that it found from clear and convincing evidence all attempts to locate the putative father or to find a suitable family member with whom to place the child had been unsuccessful; that appellant had abandoned him and failed to provide for his care and support as required by law; that appellant was guilty of excessive use of and a history of unrehabilitated abuse of narcotic and dangerous drugs and controlled substances; that the effect of these renders her incapable of providing adequately for the physical, mental, emotional and moral conditions and needs of the child; that she had been convicted of felonies and imprisoned therefor, which had a demonstrable negative effect on the quality of the parent-child relationship; that appellant was guilty of parental misconduct or inability in that the child was deprived, the cause of his deprivation being the lack of proper care and control by appellant; that the cause of the deprivation was likely to continue or was not likely to be remedied; and that the continued deprivation would cause or was likely to cause serious physical, mental, emotional and moral harm to the child. The court further found that the child's putative father had failed to form a familial bond with the child or to legitimate him, and that an order

had previously been entered terminating the putative father's rights. The court concluded that since the Department of Human Resources had made an exhaustive and thorough search for a family member with whom to place the child and found no one suitable, his temporary and permanent custody was placed and continued with the Department of Human Resources for the purpose of placing the child for adoption.

"In this case there is evidence of appellant's lengthy and continued neglect of this child. A 'lengthy and continuing neglect of . . . children, is sufficient to authorize the termination of appellant's parental rights' at least when coupled with some other significant factor. [Cit.] Moreover, parental unfitness supporting a termination of parental rights can be caused ' " 'either by intentional or unintentional misconduct resulting in abuse or neglect of the child or by what is tantamount to physical or mental incapacity to care for the child.' " ' [Cit.] In this regard, OCGA § 15-11-81 (b) (4) (B) (i) provides that in determining whether the child is without proper parental care and control the court *shall* consider certain medically verifiable deficiencies of the parent's mental or emotional health. The resulting deprivation, however, must be shown ' " 'likely to continue and likely to cause serious harm to the child.' " ' [Cit.]" *In the Interest of E. P. N.*, 193 Ga. App. 742, 747-748 (2c) (388 SE2d 903).

Clearly, appellant's habitual drug use, commission of crimes and resulting incarcerations provided the necessary element of continued deprivation and authorized the finding that remaining in appellant's custody would be likely to cause serious harm to the child. " ' " 'The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review . . . is not met.' " ' [Cit.] ' "(T)he appropriate standard of appellate review . . . is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody were lost. . . ." ' [Cits.] We find that the evidence in this case could be so viewed, and that no basis exists for reversing the judgment of the juvenile court. [Cits.]" *In the Interest of E. P. N.*, 193 Ga. App. 742, supra at 748. Accord *In the Interest of J. A. B.*, 189 Ga. App. 79, supra; *In the Interest of A. T.*, 187 Ga. App. 299 (1) (370 SE2d 48).

*Judgment affirmed. Sognier, C. J., and Carley, J., concur.*

DECIDED JANUARY 17, 1991.

*Larry L. Duttweiler*, for appellant.
*Joseph E. Cheeley III, Michael J. Bowers, Attorney General*,

*Carol A. Cosgrove, Senior Assistant Attorney General,* for appellee.