A91A0717. In the Interest of S. K. L., a child.
(405 SE2d 903)

Birdsong, Presiding Judge.

Appellant is the undisputed natural father of S. K. L. A petition was filed on June 21, 1990, seeking to terminate the parental rights of both parents, and the lower court issued an order terminating those rights. Appellant has elected to appeal this order; the natural mother who did not attend the hearing on the petition has not appealed.

S. K. L. who was born on January 8, 1988, was a "fetal alcohol syndrome baby," which resulted in his developmental delay. The record is replete with evidence of the mother's alcoholism and emotional problems and of her repeated child neglect. On April 21, 1988, the juvenile court awarded the county Department of Family & Children's Services (DFCS) temporary custody of the child finding that S. K. L. was deprived. Appellant was not present at this hearing, as he apparently was then incarcerated in Michigan, and his parental rights were not affected thereby. In January of 1989, appellant returned to Savannah area having had his Michigan parole transferred to Georgia for the asserted purpose of being near his son. He immediately expressed a desire to become involved in parenting his child. On June 26, 1989, a motion was filed in the juvenile court to modify the prior court order to include appellant in the case plan. On July 14, 1989, following a hearing which both parents attended with their respective attorneys, the juvenile court issued an order again declaring S. K. L. to be in a state of deprivation. This order was designed ultimately to return S. K. L. to his parents' physical possession, provided they met the following conditions: each parent to pay $10 per month as child support to the DFCS; to provide a stable home for S. K. L.; *not to violate any law or ordinance*; provide DFCS with names and addresses of all relatives who might be able to care for S. K. L.; and, to engage in marital counseling should they reside together. Additionally, appellant was ordered to submit to a psychological evaluation to

be conducted on August 23, 1989.

Following this hearing the child's parents separated. On August 20, 1989, appellant was arrested for robbery by sudden snatching and was incarcerated. Following his incarceration in Georgia, he will be returned to Michigan for charges stemming from his parole violation. These charges could require him to remain in prison until March 1993. During this same period, the child's mother seemed to be making progress. In December 1989, a review hearing was held. Appellant, who was then incarcerated, was given an opportunity to attend this hearing but declined. Following the hearing, S. K. L. was placed with his mother for a period of monitoring. Shortly thereafter the mother's condition deteriorated; she was arrested for disorderly conduct, being intoxicated in a lounge to which she had gone with her child. In January 1990, S. K. L. was returned to foster care. Subsequently, during a regular visit, the mother fled with the child to Florida; S. K. L. was recovered and returned. Shortly thereafter the petition for termination of parental rights was filed.

A clinical social worker and psychotherapist, whose qualifications include a master's degree in social work from the University of Georgia, testified regarding S. K. L.'s history and his need for a stable environment, and that if the child did not receive such stability, being a fragile child he might revert to previous "trance-like" behavior and inability to relate to other people or to make any kind of bond.

Appellant has consistently shown a desire to retain his parental rights over S. K. L. He testified inter alia that he had sent S. K. L. drawings from jail, continuously inquired as to the child's welfare, and secured transfer of his Michigan probation to Georgia to be near the child. Appellant returned to Georgia in January 1989. He apparently was given immediate custody of S. K. L. every other weekend; however, custody was terminated after the appellant was arrested for disorderly conduct, as a result of fighting on the highway with the child's mother when both had been drinking.

Appellant is in partial compliance with the provisions of the court order of July 14, 1989, however, it is contested whether he paid $10 monthly support payments as required by the order. Appellant's subsequent commission of the crime of robbery by sudden snatching was in contravention of the provisions of the order that he not violate any law or ordinance. Appellant did not complete psychological testing, as he was incarcerated for this offense on the day he was to be tested; appellant also testified he was "really against" the test because he did not have the time and was so busy.

Appellant made an admission in open court that he had "taken . . . many psychological examinations" in prison, and "all [his] psychological reports were hedonistic impulses with time immatur [sic]," and included counseling recommendations. Appellant who is

now almost 36 years of age has admitted being in prison for 13 or 14 of the last 18 years. *Held*:

1. Appellant asserts that petitioner failed to establish by clear and convincing evidence that appellant should have his parental rights terminated. We disagree.

The two-pronged step for the termination of parental rights is contained in OCGA § 15-11-81 (a). And at the outset, we note that the juvenile court found by its order of July 14, 1989, following the hearing attended by both parents and their respective attorneys, that S. K. L. "is in a state of deprivation as found by the order of April 21, 1988." This clearly constitutes a finding of continuing deprivation, and this ruling was not appealed.

"Although imprisonment alone does not always compel a termination of parental rights," it will support such a ruling when adequate aggravating circumstances are shown to exist. *In the Interest of R. L. H.*, 188 Ga. App. 596, 597 (373 SE2d 666); compare *In the Interest of H. L. T.*, 164 Ga. App. 517 (298 SE2d 33) (where father was a model prisoner). Thus, in determining whether a child is without proper parental care and control, OCGA § 15-11-81 (b) (4) (B) (iii) provides the court *shall* consider, "without being limited" thereto, the conviction and imprisonment of a parent for a felony offense which has a demonstrable negative effect on the quality of the parent-child relationship. The "demonstrable negative effect," however, is capable of being shown by circumstantial as well as by direct evidence. And where, as in this case, an incarcerated parent has a criminal history of repetitive incarcerations for the commission of criminal offenses or parole violations, this constitutes an additional factor which may be considered in determining whether the child *presently* is without the proper parental care and control of the offending parent, and that such is likely to continue. See *In the Interest of D. R. C.*, 198 Ga. App. 348, 351 (4) (401 SE2d 754). As a general rule, "while . . . past deprivation is not sufficient for termination without a showing of present deprivation, the past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue." *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (361 SE2d 246).

Further, the trial court found as fact that appellant failed to comply with the court order of July 14, 1989, primarily because during a period of intoxication he committed a robbery by sudden snatching and was incarcerated. These finding of fact are, as are the other pertinent findings of fact of the trial court, supported by clear and convincing evidence of record, and thus are sufficient to support a legal determination that appellant's violation of the court order was a result of his own willful and wanton criminal conduct. "Obviously, those same factors which show the existence of parental misconduct

or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490).

"The appropriate standard of appellate review in a case of this sort is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody were lost." (Citations and punctuation omitted.) *In the Interest of J. L. G.*, 191 Ga. App. 904, 905 (1) (383 SE2d 376). "The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review is not met." (Citations and punctuation omitted.) *In the Interest of E. P. N.*, 193 Ga. App. 742, 748 (388 SE2d 903). Applying these standards we find the trial court did not err. Compare *In the Interest of D. R. C.*, supra; *In re J. L. W.*, 170 Ga. App. 886 (318 SE2d 751).

2. Appellant also contends the trial court erred in entering judgment without basing its decision on a finding that jurisdiction was proper "in its court."

(a) This constitutes only an enumeration of error grounded upon the failure of the trial court to show in its order the existence of subject matter jurisdiction. However, in the appellant's brief an attempt is made to expand the error beyond the scope of the enumeration to include a claim that the juvenile court's order is void because it does not show on its face the facts necessary to grant it jurisdiction both over the subject matter and the person and to establish proper venue. "Existing enumerations of error cannot be enlarged to include issues not made therein." (Citation and punctuation omitted.) *Rowe v. Rowe*, 195 Ga. App. 493, 495 (3) (393 SE2d 750). "An enumeration of error cannot be enlarged at the appellate level by statements in the briefs of counsel to include issues not made in the enumeration. One cannot expand the scope of review or supply additional issues through a process of switching, shifting, and mending your hold." (Citation and punctuation omitted.) *West v. Nodvin*, 196 Ga. App. 825, 830 (4 b) (397 SE2d 567).

(b) Additionally, lack of personal jurisdiction and improper venue are issues that can be waived. See e.g., OCGA § 9-11-12 (b); *Whitley v. Hsu*, 260 Ga. 539 (397 SE2d 694). As appellant did not timely raise these issues before the juvenile court, we deem them waived.

(c) As a general rule, "[a] juvenile court is a court of special and limited jurisdiction, and its judgments must show on their face such facts as are necessary to give it jurisdiction of the person and subject matter. If the order of a juvenile court fails to recite the jurisdictional facts, the judgment is void." (Citations and punctuation omitted.

*Lockhart v. Stancil,* 258 Ga. 634 (373 SE2d 355).

Those cases cited by appellant which interpreted the jurisdiction of a juvenile court based on the Ga. Const. of 1976, Art. VI, Sec. XIV, Pars. I-V, are distinguishable. Compare *In the Interest of R. A. S.,* 249 Ga. 236 (290 SE2d 34) discussing the amendment, effective January 1, 1981, excepting juvenile court cases from the constitutional limitation that certain civil cases must be tried in the county where the defendant resides.

Juvenile court cases may now be tried as provided in the Juvenile Court Code of Georgia. Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. See *In the Interest of S. H. and I. W.,* 163 Ga. App. 419 (294 SE2d 621). Pursuant to OCGA § 15-11-5 (a), juvenile courts shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action, inter alia, concerning any child who is alleged to be deprived, or involving any proceedings for the termination of the legal parent-child relationship, other than in certain cases not here applicable. OCGA § 9-11-4. OCGA § 15-11-15 provides in pertinent part: "A proceeding under this article may be commenced in the county in which the child resides." See *Cain v. Dept. of Human Resources,* 166 Ga. App. 801 (305 SE2d 492).

The order of the juvenile court reflects on its face that the case involved the subject matter of termination of parental rights of both appellant and the child's mother. The order expressly states that "both parents were *properly* served with process," and appellant "attended the hearing with his attorney." (Emphasis supplied.) Although the child's mother did not attend the hearing, she was represented by her attorney who participated fully. The child also was represented by an attorney at the hearing.

In addition, the order expressly states that by previous court order of April 21, 1988, S. K. L. was placed in the "custody" of the Chatham County Department of Family & Children's Services. It may be presumed as a matter of law, subject to rebuttal, that upon the effective date of that order the child being in the custody of the Chatham County DFCS did in fact obtain a Chatham County residence. Although the child thereafter experienced eight changes of custodians, nothing in the order or the record establishes that they obtained a legal residence other than Chatham County during this time period. Moreover, in January, 1990, the child's maternal grandfather physically "placed the child with the Department"; and, the order reflects he remained with the Department thereafter, except for a brief period when taken to Florida by his mother without notice to the Department. The child was found by a DFCS caseworker who went to Florida and secured the child's release. Thus, the order establishes on its face, in conjunction with the above-stated presumption of law (see generally OCGA § 24-4-21), that S. K. L. was a Chatham County resi-

dent as of the date the Chatham County DFCS was given custody of him on April 21, 1988; and, such residence status not being rebutted in said order or elsewhere is presumed to be continuing (*Esco v. Jackson*, 185 Ga. App. 901, 906 (366 SE2d 309)). For the above reasons, appellant's second enumeration of error, as crafted, is without merit.

Judgment affirmed. *Pope and Cooper, JJ., concur.*

DECIDED MAY 20, 1991.

Hudson, Galloway & Vaughan, *J. Scott Vaughan*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Margot M. Cairnes, Leo G. Beckmann, Jr., Special Assistant Attorney General,* for appellee.