A97A2095. IN THE INTEREST OF J. E. E., a child.
(493 SE2d 34)

BIRDSONG, Presiding Judge.

Appellant minor child, J. E. E., by and through his attorney appeals the order of the Juvenile Court of Cobb County denying the petition to terminate the parental rights of his mother, Barbara Ellen Rowe, to J. E. E.

On January 24, 1994, Ms. Rowe who was then pregnant with J. E. E. was arrested for possession of cocaine and marijuana. She subsequently was convicted for these offenses and was sentenced on November 14, 1995, to ten years incarceration with three years to serve and the remainder on probation.

J. E. E. was born on July 27, 1994; four days after his birth, he was removed from his mother and placed in protective custody because both he and his mother tested positive for cocaine. On August 2, 1994, a hearing was held before the juvenile court and J. E. E. was found to be deprived because of his testing positive for cocaine, his mother's extensive drug history, her previous incarceration for drug abuse, and her current lack of a verifiable residence. Pursuant to this finding, the juvenile court ordered that J. E. E. remain in the temporary custody of the Cobb County DFCS. On September 21, 1994, a final deprivation hearing was held and it was ordered J. E. E. continue to remain in temporary custody of DFCS; it

was also ordered that a comprehensive case plan be prepared. Ms. Rowe was incarcerated in the Cobb County Womens' Detention Center at this time. J. E. E. has never been returned to his mother's custody and currently remains in the temporary custody of DFCS. At the September 21, 1994 deprivation hearing, the court ordered Ms. Rowe to (a) undergo alcohol and drug treatment, (b) submit to periodic drug testing and remain drug free for at least one year, (c) undergo psychological evaluation, (d) maintain a stable residence, (e) pay child support in the amount of $200 per month for J. E. E. and his sibling, and (f) consistently visit the child and his sibling. Ms. Rowe did not timely complete any of these ordered conditions. Since August 1994 when J. E. E. was placed in DFCS temporary custody, Ms. Rowe has not worked and has only visited J. E. E. four times. Although asserting a willingness to pay the court ordered child support in full, as of the date of the termination hearing, Ms. Rowe was $3,000 in arrears. On November 1, 1995, Ms. Rowe was also found to be an unfit parent as to another of her children, J. E. R., and her parental rights were terminated as to that child.

Ms. Rowe has the following drug convictions: (a) possession of cocaine with intent to distribute on January 24, 1994, (b) conviction for cocaine possession on November 22, 1994, and (c) cocaine possession on January 17, 1996. Ms. Rowe tendered in evidence a chemical evaluation which identified these additional criminal incidents: (a) possession of drug paraphernalia and bad check writing in 1976, (b) possession of methamphetamine in 1980, (c) stolen and forged checks in 1980, (d) possession of heroin, cocaine and methamphetamine in 1980, (e) public drunk and prostitution in 1980, (f) child endangerment and DUI in 1993, and (g) DUI in 1993. During 1980, Ms. Rowe was also involved in several probation and parole violations. In 1994, she was charged with a simple battery involving her 19-year-old daughter. Ms. Rowe was incarcerated from June 1, 1995 through mid-December 1995. In mid-December 1995, she was erroneously released, and within two days she used cocaine daily until her re-arrest on January 17, 1996. She has been incarcerated since January 17, 1996; her maximum confinement date is March 3, 1998.

Ms. Rowe commenced drinking at age 11 and has a 27-year history of excessive alcohol and drug abuse. A detailed chemical dependency evaluation of Ms. Rowe, completed in December 1994 and updated July 1, 1996, concludes that she "is in the chronic and advanced stage[s] of alcoholism and drug dependence"; and "[w]ithout a treatment intervention being administered and monitored over a long duration of time, Ms. Rowe will continue use." However, the evaluation recognizes that Ms. Rowe has taken a "superb first step" by completing certain residential therapeutic courses while incarcerated. Her prospects for rehabilitation are considered

good, provided certain long-term residential and outpatient treatment recommendations were made a mandatory condition of her parole. Since January 1996, Ms. Rowe has completed the following classes, which are part of the prison's Substance Abuse Treatment Program: (a) substance abuse class 101, (b) substance abuse treatment program phase one, (c) substance abuse treatment program phase two, and (d) substance abuse treatment program phase three. During her 27-year history of drug and alcohol abuse, these are the only classes which Ms. Rowe has completed; her chemical dependence evaluation recommends a minimum treatment period of six years from her release from incarceration.

The termination hearing was held on April 23, 1997; J. E. E. was then two and one-half years old. Subsequently, the juvenile court entered its order denying the petition for termination. In its order the court found inter alia that: "On [Ms. Rowe's] release from incarceration, which will occur no later that March 1998 she will enter the Comprehensive Addiction Rehabilitation Program . . . for which she has already been accepted and at which she will have the possibility of having the child. This is voluntary on her behalf. After the CARP program she will, voluntarily, enter the Georgia Recovery Centers Inc. outpatient program." The court also found that: "[W]hile the child is currently deprived because of the [m]other's incarceration the evidence presented does not show that the deprivation is likely to continue on the [m]other's release. The State is providing to the [m]other various programs designed to integrate inmates with and help them have custody of their children. The [m]other . . . has freely and voluntarily undertaken every program available to her to this end. She has never been involved in such programs before. Her involvement in these programs has lasted continuously for over one year, and she is still involved. It cannot be assumed that these State [p]rograms will fail, and there is no evidence to show that they will. The [m]other has valid plan for the care of the child on her release. . . . The [m]other has an annuity of over $700.00 per month and stands ready to purge herself of her contempt by paying the sum of $3000.00 and child support of $100 per month." *Held*:

1. Appellant has not established that the trial court failed to apply a clear and convincing legal standard. On appeal the burden is on the appellant to show both harm and error affirmatively by the record. *Baker v. Baker*, 194 Ga. App. 477, 489 (390 SE2d 892); accord *Robinson v. State*, 212 Ga. App. 613, 616 (2) (442 SE2d 901). *In re R. L. Y.*, 181 Ga. App. 14 (351 SE2d 243), where the trial court terminated the natural father's parental rights, is distinguishable; moreover, although a whole court case, *In re R. L. Y.*, supra, constitutes physical precedent only as five judges did not fully concur in the legal analysis therein employed.

2. "Pursuant to OCGA § 15-11-81 (a) there exists a two-step process in considering the propriety of termination of parental rights. First, the court shall determine whether there exists clear and convincing evidence of parental misconduct or inability; secondly, if such clear and convincing evidence exists, the court shall then consider whether termination of parental rights is in the best interest of the child, 'after considering the physical, mental, emotional, and moral condition and needs of the child . . . including the need for a secure and stable home. . . .' " *In the Interest of S. H.*, 204 Ga. App. 135, 138 (1) (418 SE2d 454). With certain exceptions not here applicable, the court may terminate parental rights if the court determines parental misconduct or inability by finding inter alia that: (a) a decree has been entered by a court of competent jurisdiction of this state ordering the parent to support the child, and the parent has wantonly and willfully failed to comply with the order for a period of 12 months or longer; or, (b) the court determines parental misconduct or inability by finding that (i) the child is a deprived child, as such term is defined in Code Section 15-11-2, (ii) the lack of proper parental care or control by the parent in question is the cause of the child's status as deprived, (iii) such cause of deprivation is likely to continue or will not likely be remedied (note: while past deprivation is not sufficient for termination without a showing of present deprivation, the past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue. *In the Interest of S. K. L.*, 199 Ga. App. 731, 733 (1) (405 SE2d 903)), and (iv) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (2) & (4). In determining whether the child is without proper parental care and control, the court *shall* consider, inter alia, without being limited to, the following: excessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotics or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child; conviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship; egregious conduct or evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature; or physical, mental, or emotional neglect of the child or of another child by the parent. OCGA § 15-11-81 (4) (B) (ii), (iii), (iv) & (v). Where, as in this case, the child is not in the custody of the parent, as an additional consideration in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly

for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) to communicate or to make a bona fide attempt to communicate with the child in a meaningful, supportive, parental manner; (ii) to provide for the care and support of the child as required by law or judicial decree; and, (iii) to comply with a court ordered plan designed to reunite the child with the parent or parents. OCGA § 15-11-81 (C). " ' "If there is clear and convincing evidence of [statutorily required] parental misconduct or inability, the court shall then consider . . . whether termination is in the best interest of the child, after considering the physical, mental, emotional and moral condition and needs of the child, including the need for a secure and stable home." ' " *In the Interest of S. H.*, supra at 139 (4). " ' "[T]hose same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." ' " Id. at 140 (4).

On appeal of the denial of a termination petition, an appellate court's role is to determine if there is sufficient evidence to authorize the trial court's judgment; it is not to give a de novo opinion as to the weight of the evidence. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review is not met. See *In the Interest of E. C.*, 225 Ga. App. 12, 19 (482 SE2d 522). However, a juvenile court is required in termination proceedings to follow strictly the provisions of OCGA § 15-11-81 and to make the determinations therein required. In reaching its determinations, a juvenile court must be protective of the constitutional rights of both parent and child. See, e.g., *In the Interest of E. P. N.*, 193 Ga. App. 742, 749 (2) (c) (388 SE2d 903).

The juvenile court's order on its face reveals that the trial court erroneously limited its finding of current deprivation to a deprivation arising solely from the mother's incarceration. (Of course, incarceration can under certain conditions support a termination of parental rights. *In the Interest of S. K. L.*, supra at 733 (1); OCGA § 15-11-81 (b) (4) (B) (iii); compare *In the Interest of D. T.*, 221 Ga. App. 328 (471 SE2d 281).) The record establishes, however, that the child had been found to be deprived due to the mother's extensive drug use history and her transient lifestyle. This order was not appealed. A fair risk exists that if the trial court had also considered the child's current deprivation due to these circumstances, it would not have found the evidence insufficient to show that "deprivation is likely to continue on the Mother's release." Moreover, the trial court failed to affirmatively determine in its order whether there exists present evidence of parental misconduct or inability. OCGA § 15-11-81 (a) & (b). (It cannot be held that the trial court reached this determination by implication as its deprivation determination was tainted and because

parental misconduct or inability can also be established under certain circumstances by failure to comply with an order to provide child support. OCGA § 15-11-81 (b) (2).)

The trial court's order is vacated and the case remanded for reconsideration and affirmative determinations in accordance with OCGA § 15-11-81. At the remand hearing both parties shall be given an opportunity to present any additional evidence relevant to this matter. Ga. Const. of 1983, Art. VI, Sec. I, Par. IV.

*Judgment vacated and case remanded with direction. Ruffin and Eldridge, JJ., concur.*

DECIDED OCTOBER 16, 1997.

*Betty R. Blass*, for appellant.
*Sanders B. Deen, Garland C. G. Moore, Bobby G. Adkins, Jr.*, for appellee.