509 S.E.2d 147 (1998)
235 Ga. App. 247
In the Interest of J.E.E., a child.
No. A98A1770.
Court of Appeals of Georgia.
November 12, 1998.
Carl E. Martin, for appellant.
Garland G. Moore, Sanders B. Deen, Marietta, for appellee.
HAROLD R. BANKE, Senior Appellate Judge.
By and through counsel, four-year-old J.E.E. appeals the juvenile court's denial of the petition for termination of his mother's parental rights.[1] He enumerates ten errors on appeal.
This case appeared before the court once previously. Our prior opinion vacated the juvenile court's first denial of the petition to terminate the mother's parental rights and *148 remanded with direction to consider whether (1) factors other than incarceration caused J.E.E.'s current deprivation; and (2) present evidence of parental misconduct or inability existed. In the Interest of J.E.E., 228 Ga. App. 831, 835(2), 493 S.E.2d 34 (1997). After an additional hearing, the juvenile court reconsidered the case and again declined to terminate the mother's parental rights.
The record shows that despite a long history of drug abuse and incarceration, the mother appears to be rehabilitated.[2] During her most recent incarceration, the mother took all the rehabilitation and parenting classes available to her. After her release into a transitional center, she obtained employment, remained current with her child support, continued her parenting classes, made progress in her relationship with J.E.E., regularly attended narcotics anonymous meetings and other drug rehabilitation, received no corrective or disciplinary notices, and saved over $5,000 from her wages and an annuity. She passed all drug tests and strip searches.
In its order refusing to terminate the mother's parental rights, the juvenile court observed that the mother had "made a remarkable recovery which she has sustained over a period of two years .... Her appearance, demeanor, language and manner all demonstrate a determination to change her life and provide for her son a good nurturing home." Held:
J.E.E. argues that the juvenile court erred in finding no evidence of present parental misconduct or inability. We disagree.
In analyzing this issue, we must determine whether a rational trier of fact could have found clear and convincing evidence, viewed in the light most favorable to the mother, sufficient to uphold the juvenile court's decision. In the Interest of R.D.S.P., 230 Ga.App. 205, 495 S.E.2d 867 (1998). If any competent evidence supports that holding we must affirm, as this Court may not reweigh the evidence. See In re Application of Ashmore, 163 Ga.App. 194, 198(4), 293 S.E.2d 457 (1982).
The juvenile court followed the statutory requirements for making termination decisions codified at OCGA § 15-11-81. The record refutes J.E.E.'s contention that the court failed to consider factors other than the mother's incarceration in finding no evidence of current parental misconduct or inability. OCGA § 15-11-81(b)(4)(A); In the Interest of J.E.E., 228 Ga.App. at 835(2), 493 S.E.2d 34. It clearly considered such other factors as the mother's history of drug and alcohol abuse and incarceration and their effect on her child.
Although the juvenile court found that J.E.E. was a deprived child, it rejected the State's contention that a lack of proper parental control was the sole cause of his status as deprived. OCGA § 15-11-81(b)(4)(A)(i) and (ii). In support of this finding, the juvenile court noted that the Department of Family & Children Services ("DFCS") undermined the mother's attempt to participate in a prison-sponsored parenting program with the child. The record contains no evidence that the mother was ever cruel or abusive to, or physically neglectful of any of her children. At the time of the hearing, the mother had been sober and drug free for two years, was presently employed and involved in drug rehabilitation and parenting classes.
The record shows that the mother was in good standing with her child support, availed herself of the opportunity to visit the child each time it arose, and improved her parenting skills with each visit. OCGA § 15-11-81(b)(4)(C). In addition, the record supports the trial court's finding that the mother "made every bona fide effort to communicate with the child since her incarceration and ... [took] advantage of every opportunity given her by DFCS ... [notwithstanding the fact that] DFCS limited the contact of this [m]other with this [c]hild."
The clear and convincing evidence supporting that finding undermines J.E.E.'s argument that the trial court did not properly consider OCGA § 15-11-81(b)(4)(C)(i). Viewing the mother's actions in the most favorable light, we find no support for a claim that the mother failed significantly for a period of a year or longer after her rehabilitation *149 to communicate with the child or was arrears in child support. OCGA § 15-11-81(b)(4)(C)(i) and (ii). The evidence also supports the trial court's finding that the mother was currently in compliance with the case plan, with the exception of obtaining suitable housing inasmuch as she resided at the transitional center.[3] OCGA § 15-11-81(b)(4)(C)(iii).
Viewed in the mother's favor, the evidence is clearly sufficient to support the juvenile court's finding that present evidence of parental misconduct or inability did not exist. In the Interest of J.E.E., 228 Ga.App. at 835(2), 493 S.E.2d 34. It is entirely appropriate to consider a parent's progress in meeting the goals established by the case plan or the juvenile court when determining whether to terminate parental rights. See In the Interest of R.U., 223 Ga.App. 440, 442, 477 S.E.2d 864 (1996). This was our purpose in specifically acknowledging the propriety of considering additional relevant evidence on remand. In the Interest of J.E.E., 228 Ga. App. at 836(2), 493 S.E.2d 34. "A finding of unfitness must be based on present circumstances." In re N.F.R., 179 Ga.App. 346, 348(2), 346 S.E.2d 121 (1986).
Notwithstanding the overlap and repetition in J.E.E.'s brief, this case actually turns on the viability of the juvenile court's determination that the cause of his deprivation was unlikely to continue. OCGA § 15-11-81(b)(4)(A)(iii). J.E.E.'s challenge to that finding and others is based solely on his mother's actions prior to her rehabilitation and entirely ignores the clear and convincing evidence that she has remained clean, sober, employed, and desirous of parenting J.E.E. over a period of years. Even were we to find that the juvenile court erred in finding no parental misconduct or inability, we would still affirm due to the sufficiency of the evidence indicating that the cause of the deprivation was unlikely to continue. OCGA § 15-11-81(b)(4)(A)(iv).
"`There is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship.' [Cit.]" Jones v. Dept. of Human Resources, 168 Ga.App. 915, 916(1), 310 S.E.2d 753 (1983). The order at issue evinces a clear understanding of that precept while imposing strict conditions to protect the child should the mother relapse, including gradually increasing visitation and continuation of an out-patient treatment program. Because the record supports the juvenile court's disposition of this matter, we affirm.
Judgment affirmed.
JOHNSON, P.J., and SMITH, J., concur.
NOTES
[1] In the circumstances of this case, particularly in light of J.E.E.'s tender years, it is difficult to imagine that his desires are reflected in the decision to appeal the trial court's order.
[2] The mother's past is described in our previous opinion.
[3] The case plan required the mother to (1) undergo drug and alcohol treatment; (2) submit to periodic testing and remain drug free; (3) undergo a psychological evaluation; (4) maintain a stable residence; (5) pay child support; (6) consistently visit the child.