A11A0495. IN THE INTEREST OF A. T. et al., children.
(711 SE2d 382)

BARNES, Presiding Judge.

The biological mother of A. T., J. T., and L. T. appeals from the juvenile court's orders finding that the children remained deprived, extending temporary custody with the DeKalb County Department of Family and Children Services ("DFCS"), and discontinuing reunification services. Because the juvenile court's orders primarily relied upon inadmissible hearsay, we must vacate the orders and remand for reconsideration in light of this opinion.

On appeal from an order finding deprivation or extending temporary custody of the children to DFCS, we construe the evidence in the light most favorable to the juvenile court's findings. See *In the Interest of Q. A.*, 306 Ga. App. 386 (702 SE2d 701) (2010); *In the Interest of R. J. M.*, 295 Ga. App. 886, 887 (673 SE2d 527) (2009). The same standard of review applies on appeal from a juvenile court order discontinuing reunification services to a parent. See *In the Interest of J. B.*, 274 Ga. App. 564 (618 SE2d 187) (2005).

Viewed in the light most favorable to the juvenile court's findings, the evidence showed that L. T. was born on December 4, 2001; J. T. was born on August 29, 2004; and A. T. was born on July 21, 2005. In February 2007, the children came into the emergency care of DFCS after J. T. suffered a brain injury. While the mother claimed that J. T. had slipped in the bathtub, medical personnel concluded that the injuries sustained by the child "were highly suspicious for non-accidental trauma." The juvenile court adjudicated the children deprived and awarded temporary custody to DFCS.

DFCS developed a reunification case plan requiring the mother, among other things, to complete parenting classes and participate in individual and family therapy to learn how "to utilize non-harmful methods of discipline on the children." The juvenile court entered an order approving the case plan and thereafter reviewed the plan on a periodic basis.

By November 2009, the mother had participated in several unsupervised, overnight visits with the children without incident,

had undergone intensive in-home family therapy, and had made significant progress in completing her other case plan goals. Consequently, the juvenile court modified the case plan to return custody of the children to the mother, subject to her compliance with certain conditions and to DFCS's continued supervision of the home.[1] The juvenile court also ordered DFCS to provide "aftercare services" to the family to assist in the transition for the mother and children.

In late January 2010, the children came back into the emergency care of DFCS based upon allegations that the mother had physically abused A. T. In light of these allegations, DFCS moved for the juvenile court to find that the children remained deprived, to return temporary custody of the children to DFCS, to extend the prior deprivation order for an additional 12-month period,[2] and to authorize DFCS to discontinue providing reunification services to the mother.

At the evidentiary hearing on these motions, an elementary school social worker testified that on January 5, 2010, she spoke with A. T., who was in first grade, after he told two teachers that he had injured his head after being tied up by his mother. The social worker testified that A. T. told her that his mother had tied his hands and feet with shoe strings because she did not want him to move. A. T. further told the social worker that he had fallen and hit his head while tied up, leading his mother to take him to the hospital, where he received two stitches. According to the social worker, A. T. said that the incident had occurred the previous Saturday, January 2, 2010. The social worker did not see any marks or bruises on A. T., but did observe that he had stitches. After A. T. disclosed this information to the social worker, she contacted child protective services, which commenced an investigation.

The DFCS case manager for the family also testified. The case manager testified that she had been monitoring the family since custody of the children had been returned to the mother in November 2009. According to the case manager, when she went to the home for an unannounced visit on January 22, 2010, A. T. told her that he

---

[1] "[A] finding that a child is deprived does not necessarily result in a loss of custody by the parent." *In the Interest of E. M.*, 264 Ga. App. 277 (590 SE2d 241) (2003). Pursuant to OCGA § 15-11-55 (a) (1), a juvenile court may "[p]ermit the child to remain with his or her parents[ ] . . . subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child[.]"

[2] The original deprivation order entered in 2007 was extended for an additional 12 months in early 2008. See OCGA § 15-11-58 (n); *In the Interest of Q. A.*, 306 Ga. App. at 387-388 (2). When the extension order was set to expire, DFCS filed a second deprivation petition, which the trial court granted in April 2009. DFCS subsequently moved for the juvenile court to extend the order granting the second deprivation petition for an additional 12 months, and it is that motion, and the order granting it, that are pertinent to this appeal.

had fallen while jumping on the bed, resulting in a head injury that required stitches. The mother confirmed A. T.'s account of what had happened but said she had lost the hospital discharge papers. The case manager had not yet received notice of the child protective services investigation and thus accepted A. T. and the mother's explanation for the head injury.

The case manager returned to the home on January 26, 2010 after learning of the child protective services' investigation into the abuse allegations and reviewing the investigatory report. She testified that A. T. then told her that his mother had tied up his hands and feet and that he had fallen and hit his head while "trying to hop." The case manager removed the children from the home, but did not follow up with the hospital.

The mother took the stand and denied the abuse allegations. She testified that on the day A. T. hurt his head, she was watching television and her three children were at home with her. According to the mother, A. T. was jumping around in the room, and she asked him to stop, but he did not. The mother testified that a few minutes later, she looked at A. T., and he was holding his head and getting up from the ground. She saw blood on his head and took him to the hospital, where he received two stitches for his head injury. The mother denied tying up A. T. and maintained that he had injured himself when he fell on a piece of furniture. She also obtained a copy of the emergency room discharge instructions from the hospital, which were admitted into evidence.

A. T. and the other two children did not testify. The State did not present any other testimony or documentary evidence to support its claim that A. T. had been physically abused by his mother. In closing argument, the mother's attorney maintained that the State had failed to carry its evidentiary burden on its motions. The attorney noted that although the case turned on what A. T. had said, "the children are not here to testify."

Following the hearing, the juvenile court entered orders on March 4, 2010 and March 17, 2010 finding that the children remained deprived, returning temporary custody of the children to DFCS, extending the prior deprivation order for an additional 12-month period, and authorizing DFCS to discontinue providing reunification services to the mother. In its orders, the juvenile court extensively relied upon its finding that A. T. had been physically abused by the mother. This direct appeal followed.[3]

---

[3] "An order within a deprivation proceeding deciding temporary custody of the child is a 'final order,' within the meaning of OCGA § 5-6-34 (a) (1), from which a direct appeal lies." *In the Interest of S. J.*, 270 Ga. App. 598, 608 (1) (a) (607 SE2d 225) (2004).

1. The mother contends that there was insufficient evidence to support the juvenile court's decision to return temporary custody of her children to DFCS for an additional 12 months and to authorize DFCS to discontinue providing reunification services. According to the mother, there was insufficient evidence that she physically abused A. T.

Under OCGA § 15-11-58 (n) (3), a juvenile court may extend a deprivation order granting temporary custody of a child to DFCS for an additional 12 months if, among other things, there is clear and convincing evidence that the child remains deprived. *In the Interest of Q. A.*, 306 Ga. App. at 388 (2). A child is deprived who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (8) (A). In turn, DFCS is authorized to discontinue reunification services if there is clear and convincing evidence that "reasonable efforts to reunify a child with his or her family will be detrimental to the child." OCGA § 15-11-58 (h). See *In the Interest of J. B.*, 274 Ga. App. at 566.

In concluding that the children remained deprived and that reunification with the mother would be detrimental to them, the juvenile court found that the mother had physically abused A. T. But in finding that the claim of physical abuse was established by the evidence of record, the juvenile court relied in its orders exclusively on the testimony of the elementary school social worker and the DFCS case manager regarding what A. T. told them. This testimony constituted inadmissible hearsay.

It is true that under the child hearsay statute,[4]

> [a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to

---

[4] Other than the Child Hearsay Statute, we discern no hearsay exception potentially applicable under the circumstances of this case. For example, the statements made by A. T. were made several days after the alleged incident and thus were clearly not part of the res gestae. See *Allen v. State*, 174 Ga. App. 206, 207-208 (1) (329 SE2d 586) (1985) (physical precedent only) (victim's statements to foster mother "some three days after the incident" not part of res gestae); *Parker v. State*, 162 Ga. App. 271, 273 (5) (290 SE2d 518) (1982) (victim's statement to mother on Monday about events that occurred on previous Friday did not come within scope of res gestae); *Scott v. State*, 131 Ga. App. 655, 655-656 (1) (206 SE2d 558) (1974) (victim's description of alleged crime to police officer several days after the occurrence was not part of res gestae). Nor could A. T.'s statements be admitted under the necessity exception because, among other things, the State failed to show that A. T. was unavailable to testify even after reasonable efforts were made to secure his presence at the proceeding. See *Battle v. State*, 244 Ga. App. 771, 774 (536 SE2d 761) (2000).

whom made *if the child is available to testify in the proceedings* and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

(Emphasis supplied.) OCGA § 24-3-16. Yet for the social worker's and the case manager's testimony to be admissible under this statute, the State was required to show that A. T. was available to testify in the deprivation proceeding. See *Woodruff v. Woodruff*, 272 Ga. 485, 486-487 (1) (531 SE2d 714) (2000); *In the Interest of B. W.*, 268 Ga. App. 862, 863 (602 SE2d 869) (2004). In the deprivation context, "available to testify" means that the child was "available to physically appear" at the juvenile court proceeding. *In the Interest of B. H.*, 295 Ga. App. 297, 302 (6) (a) (671 SE2d 303) (2008). Even if the child does not actually take .the stand and is not in the courtroom, the child is "available to physically appear" if the child remains in the parent's custody at the time of the proceeding. See id. at 302-303 (6). Likewise, the child is "available to physically appear" if the child is in the courthouse and "available if necessary" to be called as a witness. *Starr v. State*, 269 Ga. App. 466, 469 (2) (a) (604 SE2d 297) (2004).[5]

In the present case, A. T. was no longer in the mother's custody at the time of the evidentiary hearing at issue, and the mother's attorney noted on the record that none of the children were there to testify. In the absence of any evidence of record to the contrary, we must conclude that the State failed to meet its burden of showing that A. T. was "available to physically appear" at the evidentiary hearing. It follows that A. T.'s statements to the social worker and the case manager were not admissible under the Child Hearsay Statute and that the statements were unsubstantiated hearsay. See *In the Interest of B. W.*, 268 Ga. App. at 863.

It is well settled that in all juvenile court proceedings involving custody of a child, "all information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition." OCGA § 15-11-56 (a). It is equally well settled, however, that hearsay testimony lacks probative value, even absent an objection from the parties, and cannot support a juvenile court's findings of fact. See *In the Interest of K. I. S.*, 294 Ga. App. 295, 296-297 (1) (669 SE2d 207) (2008); *In the Interest of H. S.*, 285 Ga. App. 839, 842 (648 SE2d 143) (2007); *In the Interest of B. W.*, 268 Ga. App. at 863.

---

[5] We also note that the child is "available to testify" even if he or she takes the stand and is "uncommunicative or unresponsive." (Footnote omitted.) *Bell v. State*, 263 Ga. App. 894, 896 (1) (589 SE2d 653) (2003).

And while we generally presume that the juvenile court was able to sift the wheat from the chaff to consider only the legally probative evidence, that presumption "is a theoretical one, and has no place where[, as here,] it affirmatively appears to the contrary" on the face of the juvenile court's orders. *In the Interest of K. I. S.*, 294 Ga. App. at 296 (1).

Moreover, although some nonhearsay testimony was presented at the hearing that might have supported the juvenile court's ultimate determinations separate from the allegations of physical abuse,[6] the juvenile court's orders expressly discussed and extensively relied upon the abuse allegations, the only evidence of which was the unsubstantiated hearsay of the social worker and the case manager. Under these circumstances, we must vacate the juvenile court's orders finding that the children remained deprived, extending temporary custody with DFCS, and discontinuing reunification services, and we must remand the case for reconsideration in light of this opinion. See *In the Interest of S. J.*, 270 Ga. App. 598, 610 (1) (c) (607 SE2d 225) (2004); *In the Interest of M. L. P.*, 231 Ga. App. 223, 224 (498 SE2d 786) (1998); *In the Interest of J. E. E.*, 228 Ga. App. 831, 835 (493 SE2d 34) (1997). On remand, the juvenile court may take into account any events or circumstances relating to the mother and children that may have arisen since the original evidentiary hearing and that might affect the disposition of this case. See *In the Interest of T. B.*, 242 Ga. App. 564, 567-568 (5) (529 SE2d 620) (2000).

2. Although unclear from her brief, the mother also appears to contend that the juvenile court erred in dismissing new deprivation complaints that were filed by DFCS for each of the three children while the other motions discussed above remained pending. In dismissing the new complaints, the juvenile court noted that the same matter was already before the court as part of DFCS's motion to extend the prior deprivation order for an additional 12-month period. Irrespective of whether the juvenile court committed error in dismissing the new deprivation complaints, the mother has not shown how she was harmed. "It is axiomatic that harm as well as error must be shown to authorize a reversal by this court." (Citations and punctuation omitted.) *In the Interest of A. A.*, 293 Ga. App. 471, 475 (2) (667 SE2d 641) (2008).

*Judgment vacated and case remanded with direction. Adams and Blackwell, JJ., concur.*

DECIDED JUNE 7, 2011.

---

[6] For example, there was some testimony from the case manager that the mother had failed to ensure that the children had attended necessary medical and dental appointments.

*Lisa A. Patrick*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Jerry W. Thacker*, for appellee.

