A94A1513. IN THE INTEREST OF S. L. B., a child.
(449 SE2d 334)

McMURRAY, Presiding Judge.

Appellant appeals the order of the juvenile court terminating her parental rights in her two-year-old son, S. L. B. *Held:*

"Pursuant to OCGA § 15-11-81 (a) there exists a two-step process in considering the propriety of termination of parental rights. First, the court shall determine whether there exists clear and convincing evidence of parental misconduct or inability; secondly, if such clear and convincing evidence exists, the court shall then consider whether termination of parental rights is in the best interest of the child, 'after considering the physical, mental, emotional, and moral condition and needs of the child . . . including the need for a secure and stable home.' . . . OCGA § 15-11-81 (a). With certain exceptions not here applicable, the court may terminate parental rights if the court determines parental misconduct or inability by finding that: the child is a deprived child within the meaning of OCGA § 15-11-2 . . . the lack of proper parental care or control by the parents in question is the cause of the child's status as deprived; such cause of deprivation is likely to continue or will not likely be remedied; and the 'continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.' [Emphasis omitted.] OCGA § 15-11-81 (b) (4) (A) (iv). OCGA § 15-11-81 (b) (4) (B) provides, inter alia, that in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, the following: a medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child; conviction of the parent of a felony and imprisonment therefor which has a demonstrated negative effect on the quality of the parent-child relationship; and, egregious conduct or evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature." *In the Interest of S. H.,* 204 Ga. App. 135, 138 (418 SE2d 454

The child had been continuously in the custody of the Department of Human Resources since he was five days old. He has special health problems, including heart and respiratory difficulties, and

developmentally delayed. The child has been hospitalized several times, has received treatment and therapy most of his life, and continues to receive treatment from each of three therapists on a weekly basis. Additionally, the therapy routine must be continued at home on a daily basis. The termination hearing was held shortly before the child's second birthday.

The juvenile court found that clear and convincing evidence established that: "the mother maintained stable housing for a period of at least one year prior to being evicted from her home approximately three weeks before this hearing; that the mother now lives in a mobile home that is neat and clean although roaches and ants have been observed in the kitchen and on the beds; that the mother maintained telephone, utilities and cable tv service for at least six months prior to this hearing; that the mother was ordered to pay child support of $5 per week and paid $130 from June 30, 1992 until January of 1993, and that she has made no child support payments since February, 1993; that the mother's food stamps have been discontinued due to false statements made by the mother; that the mother had little food in the house at the time of the hearing and no money to purchase food until her check arrives on the first of the month; that the mother has poor money management skills and refused to accept home based services which included instruction in budgeting; that there is no evidence that the mother's money management skills will improve; that the mother has a functional IQ of 67; that the mother has speech communication problems which make it difficult to understand her at times; that there is no question of the mother's love and concern for the child; that the mother is self-focused and has a very limited understanding of the child's physical problems and learning disabilities; that the mother's attendance at the child's therapy sessions has been inconsistent; that the mother has exhibited a limited ability to provide for the child's physical safety; that the mother abuses alcohol in that she drinks on weekends and sometimes during the week until she feels good', which is usually about a twelve pack of beer; that when she drinks she often becomes loud and boisterous; that the mother pled guilty to public drunkenness in an incident which occurred in April, 1993; that the mother has been observed through the open door of her residence having sex with men, some of whom take advantage of her when she is drunk; that the mother has never addressed her alcohol problem; that there is no evidence that the mother's alcohol abuse will be controlled; that the mother frequently reacts to stress or frustration by becoming loud and angry and profane; that the mother has consistently refused to attend mental health counseling as required by this Court; that the mother refused to complete a court-ordered job training evaluation, attending only six of a thirty day program; that the mother has failed to complete classes in parenting

skills and refused home based services which included parenting skills instruction; that the mother has not demonstrated her understanding of the needs of the child or her ability to meet the child's needs. . . ." Based upon these findings of fact the juvenile court determined that the child was deprived, that the deprivation was due to "the action and inaction and inabilities of the parents" and that based upon the mother's capabilities, continuing alcohol abuse, and rejection of treatment or assistance, that the causes of the deprivation were not likely to be remedied, and that continuation in foster care without a hope of permanency is likely to cause serious harm to the emotional, physical, and moral well being of the child.

Appellant contends that the juvenile court's findings that the child was deprived, that the deprivation was caused by lack of proper care by the mother, that the deprivation was likely to cause serious harm, and that continued deprivation was likely to cause serious harm were not supported by clear and convincing evidence. Indeed, the sole enumeration of error addresses the sufficiency of the evidence to authorize the termination of appellant's parental rights in S. L. B.

" 'The standard of appellate review where a parent's rights to his child have been severed is " 'whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.' " *Blackburn v. Blackburn*, 249 Ga. 689, 694 (292 SE2d 821) (1982).' *In the Interest of B. J. H.*, 194 Ga. App. 282 (390 SE2d 427) (1990). 'The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review . . . is not met.' *In re B. D. C.*, 256 Ga. 511, 513 (350 SE2d 444) (1986)." *In the Interest of B. P.*, 207 Ga. App. 242, 244 (427 SE2d 593). In this connection, we note that while appellant points out a number of conflicts in the evidence, such conflicts do not necessarily preclude satisfaction of the appellate standard of review. Furthermore, appellant's reliance upon *Hooks v. Baldwin County Dept. of Family &c. Svcs.*, 162 Ga. App. 142 (290 SE2d 356) is misplaced since the mother in that case had successfully demonstrated her ability to care for her child, while appellant has not.

"Once explicit findings, supported by clear and convincing evidence, have been made as to the existence of a statutory ground of parental default or inability, the juvenile court must give its consideration to the best interest of the child. However, the statute does not narrowly define those essential factors which must enter into the juvenile court's consideration of the child's best interest. The statute specifies only that the child's best interest must necessarily encompass a broad consideration of his 'physical, mental, emotional, and

moral condition . . . , including the need for a secure and stable home.' Thus, entirely unlike the juvenile court's determination of parental default or inability which is narrowly limited to the objective grounds enumerated in OCGA § 15-11-81 (b), the inquiry into the best interest of the child is necessarily a broader and somewhat more subjective one. Those broad factors which are enumerated as relevant to the juvenile court's consideration of the child's best interest are precisely the sort of subjective factors which must not enter into its initial determination of the existence of a statutory ground of parental default or inability. *Crook v. Ga. Dept. of Human Resources*, [137 Ga. App. 817 (224 SE2d 806)]. Thus, in the second stage of the juvenile court's consideration of a petition to terminate parental rights, it must make a subjective finding as to the best interest of the child, which finding, by its terms and nature, cannot be confined to any set of objective standards and which is not readily amenable to appellate review other than for a manifest abuse of discretion. See generally *In re H. B. & K. B.*, [174 Ga. App. 435 (330 SE2d 173)]." *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (3), 445 (370 SE2d 490). "Moreover, 'those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest. Thus, a finding as to whether the termination of parental rights is in the best interest of the child represents, in essence, a finding as to whether the specifics of the parental default that have otherwise been found to exist are of such magnitude as to warrant the conclusion that the child himself would be better served by the grant of the petition to terminate. (Cits.) In this regard, our review of the entire record shows that there was likewise sufficient clear and convincing evidence to support the juvenile court's finding that the termination of (appellant's) parental rights . . . would be in [the child's] best interest.' *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988). See also *In the Interest of S. K. L.*, 199 Ga. App. 731 (1) (405 SE2d 903) (1991)." (Emphasis omitted.) *In the Interest of B. P.*, 207 Ga. App. 242, 245, supra. The judgment of the juvenile court terminating the parental rights of appellant is affirmed.

*Judgment affirmed. Pope, C. J., and Smith, J., concur.*

DECIDED OCTOBER 6, 1994.

*Summer & Summer, Chandelle T. Summer*, for appellant.
*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Teresa E. Lazzaroni, Assistant Attorney*

*General, Charles W. Smith, Jr.,* for appellee.