A96A0152. IN THE INTEREST OF D. T., a child.

(471 SE2d 281)

McMURRAY, Presiding Judge.

After a hearing, the Gwinnett County Juvenile Court terminated the parental rights of appellant, the natural mother, in the minor child, D. T. The child was born on February 18, 1990. Pursuant to a consent order entered on June 11, 1991, D. T. has been in the temporary custody of the Gwinnett County Department of Family & Children Services ("DFACS"), and in foster care with the same family since June 6, 1991. Appellant has a long history of drug addiction. She has been incarcerated for her repeated possession of marijuana and cocaine, and "was unable to participate in [reunification] planning due to [that] incarceration." Upon her release, "she was to begin drug treatment." Appellant was also to "remain drug free and [to] . . . maintain contact . . ." with the child. Appellant was released in "December of 1993." In January 1994, she consented to an extension of custody with the Gwinnett County DFACS, because "she did not have stable housing or employment and . . . she agreed that she could not care for the child at that time." Appellant found employment and her own apartment "and seemed to be following all of the goals . . ." of the latest reunification plan. She petitioned for a modification of physical custody so she could have unsupervised visitation with D. T. But in July 1994, appellant "relapsed and used drugs again . . . [because] the pressure was too much[;] that she had been asked to do [too] much [too] fast." Appellant "immediately checked herself into a drug treatment center." Although that clinic recommended inpatient treatment, appellant elected "to do out-patient treatment so she could keep her job[.]" Out-patient treatment was, however, unsuccessful. Appellant told Kim Crawford, of the Gwinnett County DFACS that, "when she left the Fulton County Drug Rehab Center that she used drugs the day that she left that center." Appellant again agreed to a temporary extension of custody with the Gwinnett County DFACS, because she "was unable to remain drug free and . . . [because] she could not offer the child a stable living environment." In August 1994, the Gwinnett County DFACS "added a goal for our agency . . . to pursue termination of parental rights." Since D. T. had, by then, been in foster care for almost three years, Kim Crawford was convinced that "foster drift" was "[v]ery much . . ." an issue in this case. Appellant entered another rehabilitation program. However, "she had not completed the program but chose to leave the program in December [1994]." For this, "she was incarcerated . . . for violation of parole." At this time, appellant was already "three months behind in her child support," of $50 per month.

Other evidence showed that, when D. T. "first came into care, he was real clingy and real withdrawn [whereas] at this time [after

three years of foster care], he is very outgoing. He's very bright[.]" D. T. is "very bonded to [his foster mother]. He looks to her to meet his needs[, . . . and] calls her mom." D. T. "loves to visit with [appellant, . . . but he] easily separates from her[,]" without sadness or crying. Kim Crawford affirmed that she had "considered a relative placement," with appellant's aunt. In 1991, appellant informed Kim Crawford that "her aunt's number was unlisted and that she would have her aunt contact us. Two months later, we still had not heard from her aunt. . . . [W]e finally got her aunt's number [from the foster mother]. . . . We contacted [the aunt], she said that she was a single parent and that she worked out of the home and that she was not, at that time, able to care for [D. T.] and that she felt it was better for him to stay where he was." In August 1994, Kim Crawford "asked [the aunt] if she wanted to be considered for placement of [D. T.] and she stated that she felt that he needed to be where he was. . . ." A psychological evaluation of D. T. indicated that "it would be extremely detrimental to move [D. T.] from the placement he was in[, even to the aunt's]. He's extremely bonded to his foster parent and [he had] been in her home for almost four years at [that] point."

The juvenile court determined that D. T. was deprived owing to a lack of proper parental care and control, as well as due to parental misconduct; that such deprivation was likely to continue; that termination of appellant's parental rights was "in the best interests of this child"; and that family placement with appellant's aunt was not in the best interests of the child. This direct appeal followed. *Held*:

1. Appellant first contends the juvenile court erred in terminating her parental rights, arguing there was insufficient clear and convincing evidence that the deprivation caused by appellant was "likely to continue or will not likely be remedied; and that the continued deprivation . . . is likely to cause serious physical, mental or emotional harm to the child," as required by OCGA § 15-11-81 (b) (4).

The same factors which show the existence of parental misconduct or inability, such as appellant's repeated inability in the case sub judice to overcome her drug addiction, with its consequent incarceration and loss of employment, can also support a finding that the termination of parental rights is in the best interests of the child. *In the Interest of S. L. B.*, 214 Ga. App. 802, 805 (449 SE2d 334). "The appropriate standard of appellate review in a case of this sort is whether after reviewing the evidence in the light most favorable to the judgment of the juvenile court, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody were lost. The factfinding and weighing of evidence is to be done in the juvenile court under the clear and convincing evidence test. The reviewing court is to defer to the juvenile court in the area of factfinding and should affirm unless the appellate

standard of review, here the rational factfinder test, is not met. When we apply that test here we note the conflicting evidence presented to the juvenile court and conclude that a rational factfinder could have found by clear and convincing evidence present parental inability which is likely to go unremedied, as is required by OCGA § 15-11-81 (b). The general grounds are without merit." (Citations and punctuation omitted.) *In the Interest of G. T. S.*, 207 Ga. App. 187 (1) (427 SE2d 572).

2. Appellant next contends the juvenile court erred in its placement of the child, arguing that the "statutorily required exhaustive and thorough search was not made and that there was a family member of the child who was ready, willing and able to take the child[,]" namely, appellant's aunt.

"If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with the child's extended family or with a person related to the child by blood or marriage. An exhaustive and thorough search for a suitable family member shall be made by the court and the Department of Human Resources in attempting to effect this placement." OCGA § 15-11-90 (a) (1). "If no placement of the child is effected under paragraph (1) of this subsection, the court may make any of the [legislatively authorized] dispositions[, including commitment of] the child to the custody of the Department of Human Resources. . . ." OCGA § 15-11-90 (a) (2).

Appellant does not contend that the Gwinnett County DFACS overlooked any possible family candidate except her aunt. But both times when this aunt was interviewed, she told Kim Crawford that the child was better off in foster care or otherwise in the custody of the agency. Since the aunt declined to accept the responsibility for custody of D. T., we cannot say the juvenile court abused its broad discretion in placing permanent custody of D. T. with the Georgia Department of Human Resources, through the Gwinnett County DFACS. This enumeration is without merit.

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

DECIDED MAY 8, 1996.

*Julie A. B. Prokopovich*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Kathryn C. Reeder, Edgar J. Perkerson III, Karen S. Davenport*, for appellee.