A99A1893. IN THE INTEREST OF L. H. et al., children.
(530 SE2d 753)

BARNES, Judge.

The natural father of L. H., N. H., and W. H. appeals the termination of his parental rights; the natural mother's parental rights were also terminated, but she is not a party to this appeal. The father contends the evidence is insufficient to support the termination of his parental rights because, at the conclusion of the hearing, the juvenile court announced that "[i]t's apparent from my interview with the two oldest children that they have some attachment for their parents and strong memories and some bond at least with their mother. They seem to derive some benefit from their relationship with their parents." Based on this finding, the juvenile court announced in open court that it was not in the children's best interests to terminate the parents' parental rights.

Approximately a month later, however, without receiving further evidence, the juvenile court issued an order terminating both parents' parental rights because "[t]he Court finds clear and convincing evidence that the children would most benefit from adoption with the legal and physical insulation from these unfit parents that procedure[ ] provides."

Although the father contends that clear and convincing evidence does not support the court's finding that termination of his parental rights would be in the best interests of the children, no error is enumerated regarding the juvenile court's other determinations: that the children were deprived (OCGA § 15-11-81 (b) (4) (A) (i)) through parental neglect or inability (OCGA § 15-11-81 (a)) and that the deprivation is likely to continue (OCGA § 15-11-81 (b) (4) (A) (iii)). Accordingly, no issue concerning those decisions is properly before this court. Issues not enumerated as error will not be considered. *Rider v. State*, 226 Ga. 14, 15 (2) (172 SE2d 318) (1970). Therefore, the only issue before this court is whether clear and convincing evidence supports the juvenile court's decision that termination of the father's parental rights would be in the best interests of the children. For the reasons stated below, we affirm the decision of the juvenile court.

1. The standard of review in these cases is whether, after viewing the evidence in a light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights should have been lost. OCGA

§ 15-11-86; *In the Interest of J. H.*, 210 Ga. App. 255, 258 (1) (435 SE2d 753) (1993). On appeal, this court defers to the trial court's factfindings and will affirm unless the appellate standard is not met. *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

2. The juvenile court's statement in court that the parental rights would not be terminated is of no legal significance. A trial court's oral pronouncement is not a judgment until it is put in writing and entered as the judgment. *Williams v. City of LaGrange*, 213 Ga. 241, 242 (1) (98 SE2d 617) (1957). The trial court's oral pronouncements on the record may provide insight on the intent of its subsequent written judgment, discrepancies between the two pronouncements must be resolved in favor of the written judgment. *In the Interest of R. R.*, 222 Ga. App. 301, 305 (3) (474 SE2d 12) (1996) (physical precedent). Thus, the juvenile court's oral statements on the record were not binding. Moreover, the juvenile court explained in its written order that its oral comments were based on the court's belief at the time that "it would be advisable for custody to be transferred to the maternal grandparents under the newly effective Code section 15-11-34 [(a) (2)] so that the children would have a permanent home and would have the possibility of a continuous income stream from their father and mother." After making these comments, however, the court reconsidered them based on further study of the new Code section.

3. Therefore, the only question before us is whether the juvenile court's decision to terminate the father's parental rights was supported by clear and convincing evidence. In reaching this decision, the juvenile court could properly consider the father's past conduct in determining whether the children's deprivation is likely to continue. *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (361 SE2d 246) (1987). Further, the evidence supporting the juvenile court's determination that the children were deprived and that the deprivation was likely to continue can also provide clear and convincing evidence to support the conclusion that continued deprivation will or is likely to cause serious harm to the children. OCGA § 15-11-81 (b) (4) (A) (iv); *In the Interest of D. T.*, 221 Ga. App. 328, 329 (1) (471 SE2d 281) (1996). In this case, the father never appealed the juvenile court's orders holding that the children were deprived, and these unappealed orders are sufficient to establish that the children were deprived within the meaning of OCGA § 15-11-81 (b) (4) (A) (i). *In the Interest of A. M. B.*, 219 Ga. App. 133, 134 (464 SE2d 253) (1995).

The record shows the parents separated several times during their marriage until they finally separated for good in 1992. The father's relationship with the children effectively ended in July 1994 when the children were removed from the parents' custody because the children were deprived; the mother had been arrested for drug

abuse and the father was suspected of having a drug problem. The court order placing the children in the Department of Family & Children Services' custody stated

> [the father] shall obtain a drug assessment which shall indicate whether [he] has a drug abuse problem. If the drug assessment shows that [he] does not have a drug abuse problem, then the temporary custody of the children shall automatically, without additional hearing, revert back to the father of the children.

Although the father asserts that he did not obtain the drug assessment because he was arrested the next day, the father also never obtained a drug assessment after he was released, even though the order remained in effect. Further, while he lived in Virginia, the father agreed to have a drug screen performed but would not agree to bear the expense.

As a consequence of the mother's repeated incarcerations for drug abuse and other offenses, the children lived with their maternal grandparents from July 1994 until the termination hearing in July 1998. Finally, when he learned that the citizens review panel had recommended that DFCS seek termination of his parental rights, the father requested a hearing to show that he was serious about providing a permanent home for his children. The record, however, shows no evidence supporting such a conclusion. Rather than providing a home for his children, the father lived with his mother. Further, on the day of the hearing, the father had $48 in cash, no savings, and some personal property.

As soon as the father was released from confinement in 1994, he left the state to live in Virginia. Although he called them occasionally and sent presents on birthdays and Christmas, he has not seen his children since July 1994. Further, the father was given an opportunity to see his children when the caseworker arranged a meeting, but the father returned to Virginia without doing so. At the time of the termination hearing he was living with his mother in South Carolina.

Although the court ordered him to make support payments, he stopped making those payments in June 1997 allegedly because he was dissatisfied with the contact he had with the children. At the time of the hearing he was over $15,000 in arrears in the payments ordered as part of the reunification plan and the payments previously ordered by the superior court to support his children.

Based on this evidence, the juvenile court concluded that the father failed, without justification, to provide significant financial support for his children for more than one year; he had abandoned

his children; he failed for more than one year to comply with the reunification plan; he failed for over four years to produce a drug assessment; he actively thwarted the authorities who were attempting to study whether his home was suitable for his children; and he failed to make any realistic effort to regain custody of the children.

The juvenile court further found that the continued deprivation was likely to continue and to cause further harm to the children. The children were confused about who their parents were and had little actual memory of their father. "They could not describe him physically." Having found that the children would most benefit from adoption, the juvenile court terminated the father's parental rights.

We find that clear and convincing evidence supports the juvenile court's decision to terminate the father's parental rights. Regardless of the father's continued promises to do better in the future, his demonstrated inability or unwillingness to shoulder his responsibility as a parent was demonstrated by clear and convincing evidence. The termination was in the best interests of his children. *In the Interest of J. O. L.*, 235 Ga. App. 856, 858 (510 SE2d 613) (1998).

Accordingly, the judgment of the juvenile court is affirmed.
*Judgment affirmed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED MARCH 9, 2000.

*James K. Knight, Jr.,* for appellant.
*Thurbert E. Baker, Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Sanders B. Deen,* for appellee.