A06A0356. SLEDGE et al. v. PEACH COUNTY et al.
(624 SE2d 288)

BLACKBURN, Presiding Judge.

T. J. and Frank Rauls, who jointly owned property in Peach County, sued members of the Sledge family (their neighboring landowners on the north side) to determine the boundary line between the Rauls property and the Sledge property. The Sledge family appeals the bench trial judgment in favor of the Rauls brothers, arguing that insufficient evidence sustained the judgment and that the court should have ruled in the Sledge family's favor as a matter of law. Because evidence supported the trial court's findings of fact, we affirm.

The undisputed facts show that the Sledge family owned land in Peach County per a 1956 deed from the Howells describing the land as follows:

> All that certain tract or parcel of land situate, lying and being in the State of Georgia, County of Peach and in the 9th District therein, containing 91.3 acres, more or less, and being in the form of a parallelogram off the South side of Land Lot No. 15, now or formerly in the possession of K. B. Howell and Tom Howell and bounded as follows: On the North by lands now or formerly belonging to Wright & Solomon; on the East by lands now or formerly belonging to Howard; on the South by lands now or formerly belonging to Hatcher; and on the West by lands now or formerly belonging to Wright & Solomon. Said tract of land is more particularly described according to a plat prepared by T. F. Flournoy, Surveyor, on the 25th day of September, 1933, which is recorded in Plat Book No. 1, Page 116, of the records in the Office of the Clerk of the Superior Court of Peach County, Georgia.

The Flournoy plat gave no information as to the location of the land other than to show that it was a 91.3-acre rectangle on the southern end of Land Lot 15 (in the Ninth District of Peach County) with northern and southern lines extending 2,970 feet in length and eastern and western lines extending 1,340 feet in length (with Hatcher owning the land to the south).

Frank Rauls was the successor-in-interest to the Hatcher land per the following 1973 deed description, which was in all material respects the same as in Hatcher's deed from 1938:

> All that certain tract, lot or parcel of land situate, lying and being in the State of Georgia, County of Peach and in the 9th District therein, containing 145 acres, more or less, and composed of 100 acres off the East side of Lot No. 14 and a strip lying North of Butcher's Branch in said Lot 14 bounded East and South by lands formerly owned by G. C. Hartley; West by Mossy Creek; North by lands formerly owned by Elizabeth Howard Estate.

The Elizabeth Howard Estate had formerly owned the Sledge property. Frank Rauls transferred a one-half undivided interest in his property to his brother T. J.

In 1999, the Rauls brothers had their property surveyed as part of a refinancing transaction on the property. Based on a detailed analysis, this surveyor determined that the boundary between the Sledge and Rauls properties was a line demarcated by an old fence and by iron pins, which line was 280 feet north of the land lot line between Land Lots 14 and 15. Because the Sledge family disputed this survey and began using the land south of the fence line, the Rauls brothers sued the Sledge family members (and Peach County regarding a nearby road, which issue was subsequently settled) in 2001 to have the boundary line determined as that set forth in the survey (the old fence line). The Sledge family countered that the boundary line should be the land lot line between Land Lot Lines 14 and 15. They reasoned that since their deed description referred to the southern end of Land Lot 15, and since the Rauls deed description referred to only Land Lot 14, the Rauls brothers could not be found to own land located in Land Lot 15. At issue was approximately 19 acres in Land Lot 15.

A bench trial ensued, resulting in an award in favor of the Rauls brothers that was consistent with the survey. The Sledge family appeals, arguing that the evidence did not justify the award.

On appeal from a bench trial, we do not retry the case. Rather,

> the appellate standard of review for nonjury trials of disputed material facts is the clearly erroneous test, also known as the "any evidence" rule. As such, the sole question for determination on appeal is whether there is any evidence to authorize the trial court's judgment. It is our duty to construe the evidence to uphold the judgment rather than upsetting it. This is true regardless of whether evidence also

existed that may have supported the appellant's position. In the absence of legal error, an appellate court is without jurisdiction to interfere with a judgment supported by some evidence.

(Punctuation omitted.) *Schowalter v. Washington Mut. Bank.*[1] See *Ellis v. Holder.*[2]

OCGA § 44-4-5 sets forth some of the key rules for determining disputed lines:

In all cases of disputed lines, the following rules shall apply:

(1) Natural landmarks, being less liable to change and not capable of counterfeiting, shall be the most conclusive evidence;

(2) Ancient or genuine landmarks such as corner stations or marked trees shall control the course and distances called for by the survey;

(3) If the corners are established and the lines are not marked, a straight line as required by the plat shall be run but an established marked line, though crooked, shall not be overruled; and

(4) Courses and distances shall be resorted to in the absence of higher evidence.

Furthermore, "[t]raditional evidence as to ancient boundaries and landmarks shall be admissible in evidence, the weight to be determined by the jury according to the source from which it comes." OCGA § 24-3-13. "In determining what is an ancient landmark, OCGA § 44-4-6 states that general reputation in the neighborhood shall be evidence as to ancient landmarks of more than 30 years' standing." (Punctuation omitted.) *Duncan v. Harcourt.*[3] Land lot lines do not trump all other evidence but are only one factor to be considered. See *Morgan v. Lester.*[4]

Based on these standards, ample evidence supported the trial court findings in favor of the boundary line established by the survey. Although no natural landmarks established the boundary, other evidence did. The failure in the Rauls deed to reference Land Lot 15 alone, did not determine the result here.

---

[1] *Schowalter v. Washington Mut. Bank*, 275 Ga. App. 182 (620 SE2d 437) (2005).

[2] *Ellis v. Holder*, 267 Ga. App. 503 (1) (600 SE2d 425) (2004).

[3] *Duncan v. Harcourt*, 267 Ga. App. 224, 226 (1) (599 SE2d 196) (2004).

[4] *Morgan v. Lester*, 215 Ga. 570, 571-572 (2) (111 SE2d 228) (1959).

a. *Ancient or genuine landmarks.* In 1999, the surveyor found iron pipes or pins marking the northeastern and northwestern corners of the Rauls property, which markers continued to exist throughout the litigation. Based on the surveyor's calculations, these markers, which had been in place since prior to 1980 when the Sledges had a survey done (with other evidence showing the markers had been in place since prior to 1973), were located within just a few feet of where the surveyor calculated them to be based on the property distances in the deeds and plats. Two witnesses testified that these markers delineated the boundary line between the properties. William Sledge conceded that the upper northern corners of the Sledge property were marked by such pipes, although he maintained that the lower southern corners bordering on the Rauls property for some reason were not. See *Riley v. Griffin*[5] (where "there was a line actually run by the surveyor, was marked and a corner made, the party claiming under the grant or deed, shall hold accordingly, notwithstanding a mistaken description of the land in the grant or deed").

Beyond the pipes, a fence and hedgerow had existed for over 30 years between the properties, which witnesses testified marked the boundary between the properties. The surveyor based his survey in part on this artificial monument, which was consistent with the iron pipes and which existed until William Sledge tore it down after the litigation began. The location of a fence that has existed for over 30 years constitutes an ancient landmark that controls over the description in the deed in determining boundaries. *Duncan,* supra. Even if the fence here had existed less than 30 years, such still constituted evidence on which the trier of fact could rely in determining the boundary. *Clark v. Stafford.*[6] See *Lyons v. Bassford.*[7]

b. *Acquiescence.* "Acquiescence for seven years by acts or declarations of adjoining landowners shall establish a dividing line." OCGA § 44-4-6. Here, evidence showed that for over 30 years the owners of the Rauls property (with no objection from the Sledge family) had farmed the 19-acre disputed property by planting and harvesting soybeans, wheat, vegetables, watermelons, and hay; had planted pine trees in the area; had had cattle grazing on the land; had built a small building on the property with power to the building; had stored an old truck on the property; and had had a lock on a gate on the road leading into the property at the fence line. The Sledge family did not cut timber past the fence line. Aerial photographs and testimony indicated the parties had treated the fence as the boundary

---

[5] *Riley v. Griffin,* 16 Ga. 141, 148 (8) (1854).

[6] *Clark v. Stafford,* 239 Ga. App. 69, 73 (2) (522 SE2d 6) (1999).

[7] *Lyons v. Bassford,* 242 Ga. 466, 470 (1) (249 SE2d 255) (1978).

line. The trial court was authorized to find that the fence line was the proper boundary line. See *Peacock v. Boatright*.[8]

c. *Acreage.* The surveyor testified that using the fence line as the boundary line, he calculated that the 93 acres described in the Sledge deed and the 145 acres described in the Rauls deed were remarkably accurate. "Arithmetic calculations of acreage . . . could be properly considered by the [factfinder] in determining the true location of the boundary line." *Allen v. Hiwassee Land Co.*[9] Compare *Martin v. Patton*[10] (land lot lines expressly designated in deeds as boundary lines controlled over acreage descriptions).

d. *Other evidence.* Other evidence supporting the trial court's findings included the following. No markers or monuments indicated the boundary to be further south other than the theoretical land lot lines; other old plats, drawings, field notes, and surrounding deeds were consistent with the fence being the boundary; and the land lot lines from the neighboring districts were at the fence line. In light of this and the other evidence presented at trial, we affirm the trial court's factfindings in favor of the Rauls brothers.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED DECEMBER 9, 2005.

*Collins & Aromatorio, Lawrence C. Collins*, for appellants.
*Martin Snow, Thomas P. Allen III*, for appellees.

---

[8] *Peacock v. Boatright*, 221 Ga. 661, 663-664 (1) (146 SE2d 745) (1966).

[9] *Allen v. Hiwassee Land Co.*, 162 Ga. App. 356, 357 (1) (290 SE2d 492) (1982).

[10] *Martin v. Patton*, 225 Ga. App. 157, 162-164 (2) (483 SE2d 614) (1997) (physical precedent only).