A06A0440. IN THE INTEREST OF M. T. H. et al., children.
(632 SE2d 441)

MIKELL, Judge.

K. H., the biological mother of M. T. H. and K. G. H., ages four and three, respectively, appeals the juvenile court's order terminating her parental rights to her children and awarding custody to the Screven County Department of Family and Children Services (the "Department"). In her sole enumeration of error on appeal, the mother contends that insufficient evidence supports the juvenile court's ruling because the juvenile court did not reconvene the hearing after

---

receiving evidence from the mother's treating physician as to her ability to care for her children. For reasons that follow, we disagree and affirm.

"On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the juvenile court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights should have been terminated."[1] "We neither weigh the evidence nor determine the credibility of any witnesses, but instead defer to the juvenile court's findings of fact."[2] Appellant herein does not challenge the juvenile court's findings as to any of the factors considered when determining whether to terminate a parent's rights to his child.[3]

The record shows that the hearing on the petition to terminate the mother's parental rights occurred on January 31, 2005. There was testimony from the Department's caseworker, Cynthia Lee, who was qualified as an expert in the area of termination of parental rights, that the children came into care of the Department on November 4, 2003, when they were only one and two years old, with bruises inflicted by the mother's live-in boyfriend; that after seeing the bruises for four days, the mother never sought medical treatment for the children but continued to allow the boyfriend unsupervised contact with them; that she allowed her stepmother, who was an alcoholic, to take care of the children; that when the children were picked up from the stepmother, they both had ear infections, were in need of antibiotics, and were behind on their immunizations; and that the mother had two other children who were in the custody of their father. Lee further testified that three case plans were implemented and the mother did not meet them; that she missed appointments and was dishonest; that the mother was not seeking treatment for her Huntington's disease, despite exhibiting obvious symptoms; that she had four automobile accidents in a three-month period because of her disease; and that the Department required her to seek treatment for

---

[1] (Citation and footnote omitted.) *In the Interest of J. S. B.*, 277 Ga. App. 660 (627 SE2d 402) (2006).

[2] (Citation omitted.) *In the Interest of K. N.*, 272 Ga. App. 45 (611 SE2d 713) (2005).

[3] Before terminating parental rights, a juvenile court must employ a two-prong test. OCGA § 15-11-94 (a); *In the Interest of C. F.*, 251 Ga. App. 708, 711 (555 SE2d 81) (2001). First, the juvenile court must make a finding of parental misconduct or inability, which is proved by clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A) (i)-(iv); *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997). "In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child." (Citation omitted.) *In the Interest of S. B.*, 237 Ga. App. 692, 693 (515 SE2d 209) (1999). Accord *In the Interest of R. N.*, supra.

it, which she did not do for several months until Lee made the appointment for her and provided transportation to the neurologist's office.

The mother, Lee, and the mother's therapist, Shawn Brown, attended the meeting with the neurologist, who told them that he would not sign a medical statement for the mother to get her driver's license reinstated and that she could not be the primary caretaker of her children then or in the future due to the symptoms of her Huntington's disease. Lee opined based on other psychological evaluations that were completed on the mother and her observations of the mother's visits with her children that the mother's parental rights should be terminated; that reunification would be detrimental to the children; and that there was a very high probability that serious harm would occur to the children if they were returned to the mother. Additionally, the foster parents with whom the children had been placed for 15 months were ready, willing, and able to adopt the children.

Brown, who was retained by the Department to provide in-home intensive family therapy and in-home help, testified that he assessed K. H. and recommended that she undergo a mental health evaluation by a neuropsychologist; that K. H.'s parenting skills were poor; that he reassessed K. H. after the meeting he attended with her and the caseworker at the neurologist's office and found a marked reduction in her parenting skills; and that K. H. was often incoherent when he worked with her. Brown opined that it would not be in the children's best interests to return them to their mother and that there was a high probability that they would suffer future harm because of her inability to grasp basic parenting concepts.

The mother testified that her license had been suspended because of her Huntington's disease; that she visited a second neurologist, Dr. Stanley, who conducted testing and concluded that she was capable of caring for her children. The mother did not have a report from Dr. Stanley at the hearing, but the juvenile court agreed to leave the case open until receiving the report. The court observed that K. H. had difficulty walking, her speech was slurred, and she was unable to answer the court's questions.

In its order terminating the mother's parental rights, the court indicated that it had read Dr. Stanley's report and that the report stated that the mother currently had four children at home, ages two, three, eleven, and thirteen, which was incorrect since she had no children in her custody when she saw Dr. Stanley. Dr. Stanley's report also did not support the mother's claim that he determined that she was able to care for her children.

In her very brief argument and citation of authority, the mother argues that because there was an apparent conflict between the

medical experts in the case that the court should have investigated the matter further and allowed appellant additional time to complete her case plan goals. Though the mother does not explain the nature of the conflict in her brief, it appears from the record that the conflict arises as to the issue of the severity of her disease. Lee's testimony, which was based on reports from medical providers and her own observations as to the mother's symptoms,[4] indicated that the disease was more severe than Dr. Stanley indicated in his report. But Dr. Stanley does not give a diagnosis or prognosis in his report. In fact, he notes that he does not have the results of the mother's previous Huntington testing and recommends additional testing. In its assessment of the evidence, the trial court obviously chose to discount Dr. Stanley's report based on the inaccurate information contained therein. Nonetheless, even if there were an apparent conflict in the medical testimony, it "[does] not necessarily preclude satisfaction of the appellate standard of review."[5]

In support of her argument, the mother relies upon *In the Interest of C. G.*,[6] in which this court held that the record was insufficient to terminate a parent's rights where, although the parent had some sort of mental instability, there was no evidence identifying the nature of that instability and its expected duration nor did the state offer any medical or psychological testimony or reports regarding same.[7] In this case, the evidence was undisputed that the mother suffered from Huntington's disease, she had four automobile accidents because of her disease, and she had her license suspended for medical reasons. Therefore, *In the Interest of C. G.*[8] is inapposite.

We conclude that based on the evidence in the record, a rational trier of fact could have found by clear and convincing evidence that the mother's rights should have been terminated.[9] Therefore, we affirm the juvenile court's ruling.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 8, 2006.

*Stephen B. Taylor*, for appellant.

---

[4] "[U]nder Georgia law, it is well settled that an expert may rely on hearsay as well as reports of others in formulating his opinions." (Citation omitted.) *In the Interest of J. P.*, 253 Ga. App. 732, 737 (560 SE2d 318) (2002).

[5] *In the Interest of S. L. B.*, 214 Ga. App. 802, 804 (449 SE2d 334) (1994).

[6] 235 Ga. App. 23 (508 SE2d 246) (1998).

[7] Id. at 24-25.

[8] Id.

[9] See *In the Interest of K. N. C.*, 264 Ga. App. 475-476 (590 SE2d 792) (2003).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Shepherd, Gary & McWhorter, Millard B. Shepherd, Jr.*, for appellee.