A07A2194. BLAIR et al. v. BISHOP et al.
(660 SE2d 35)

BERNES, Judge.

Jerry E. Blair and Betty L. Rawlins filed the instant lawsuit involving a land dispute against appellees Jerry L. Bishop, Mary E. Bishop, Julius E. Cruse, Terry A. Manthey, Lisa Hamilton Manthey, Janet B. Simpson, Leon Simpson, and owners of adjacent property with common land lot and boundary lines. Following a bench trial, the trial court entered judgment in favor of appellees. Rawlins[1] appeals, pro se, challenging the sufficiency of the evidence to sustain the trial court's judgment. She also contends that the trial court's written judgment did not comport with its oral pronouncement and that this alleged variance constituted reversible error.[2] For the reasons that follow, we affirm.

1. Rawlins contends that the evidence was insufficient to sustain the trial court's judgment. We disagree.

---

[1] At trial, appellant Jerry E. Blair testified he had transferred title of the property to Rawlins as a gift prior to the filing of the lawsuit, that he had no personal claim to the property, and that he was only present to support Rawlins's claim. "It is well-settled that a person may only challenge a ruling which has adversely affected his or her own rights." (Citation and punctuation omitted.) *In the Interest of M. B. B.*, 241 Ga. App. 249, 250 (1) (a) (526 SE2d 76) (1999). See also *Perdue v. Lake*, 282 Ga. 348, 348-349 (2) (647 SE2d 6) (2007). We therefore dismiss Blair as a party to this appeal. Id. OCGA § 9-11-17 (a) ("Every action shall be prosecuted in the name of the real party in interest."). Compare *Lebbos v. Davis*, 256 Ga. App. 1, 3 (2) (567 SE2d 345) (2002) (finding former property owners to have standing to bring suit when they were alleged to be in court to perfect marketable title).

[2] Rawlins's enumerations of error primarily state substantive and procedural facts pertaining to the case. Nonetheless, based upon the arguments presented in the appellate brief, it is apparent that Rawlins seeks to challenge the entry of the trial court's judgment and the sufficiency of the evidence in support of the judgment. Therefore, we will review these claims under the authority of OCGA § 5-6-48 (f), providing for review "[when] it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, . . . what errors are sought to be asserted upon appeal . . . notwithstanding . . . that the enumeration of errors fails to enumerate clearly the errors sought to be reviewed." See *MacDonald v. MacDonald*, 156 Ga. App. 565, 565-566 (1) (275 SE2d 142) (1980). To the extent that Rawlins has alleged additional claims of error, those claims have been abandoned by her failure to present supporting argument and citation to authority in accordance with Court of Appeals Rule 25 (c) (2).

On appeal from a bench trial, we do not retry the case. Rather, the appellate standard of review for nonjury trials of disputed material facts is the clearly erroneous test, also known as the "any evidence" rule. As such, the sole question for determination on appeal is whether there is any evidence to authorize the trial court's judgment. It is our duty to construe the evidence to uphold the judgment rather than upsetting it. This is true regardless of whether evidence also existed that may have supported the appellant's position. In the absence of legal error, an appellate court is without jurisdiction to interfere with a judgment supported by some evidence.

(Citations and footnotes omitted.) *Sledge v. Peach County*, 276 Ga. App. 780, 781-782 (624 SE2d 288) (2005).

So viewed, the evidence establishes that Blair and Rawlins are a married couple claiming to have had title to the disputed property comprised of approximately nine acres located in Fayette County. They contend that the nine-acre tract was a part of approximately seventy acres that had been purchased by Blair's father, L. L. Blair, in 1944. The property was conveyed to Blair's mother under a life estate with a remainder interest in Blair in accordance with his father's last will and testament in 1972. Blair obtained title to the property by quitclaim deed from his mother in 1994, prior to the termination of the life estate. Blair claimed that he paid the property taxes but never visited the property. Thereafter, in 1999, Blair conveyed the property to his wife, Rawlins, who has never occupied the property.

Julius Cruse had acquired property adjoining the Blair/Rawlins tract in 1966. In 1968, Cruse made several improvements to the land. He cleared bushes and trees from the property and built a pond, which he used for community recreation and camping. Cruse later used the property for horse grazing.

Jerry and Mary Bishop also had acquired property adjoining the Blair/Rawlins tract in 1990. The property had previously been owned by Gaines Spivey, who claimed to have had exclusive possession of the property based upon an established fence line separating his property. After the Bishops acquired the property from Spivey, they built a residence on the property.

Blair claimed that before he conveyed the disputed nine acres to Rawlins, he had a title search and survey performed for the property. He further claimed that he learned from the survey that the Bishops' house had been built on a portion of the nine acres. Blair was aware that Cruse had built a dam for his pond on another portion of the nine acres, but alleged that it was done with his father's permission and

that Cruse had not previously claimed entitlement to the property. As a result of the adjoining landowners' uses of the property, Blair and Rawlins alleged that their nine-acre tract had been erroneously reduced to 7.4 acres. Blair and Rawlins filed the instant lawsuit against all of the adjoining landowners, seeking a determination of the land lot lines for the properties. Thereafter, they amended their complaint to seek the removal of the Bishops' encroaching house and to quiet title as to Cruse's claim to the disputed property.

Based upon the parties' arguments and averments at trial, the trial judge determined that the disputed claims to the property involved a boundary dispute rather than a land lot dispute. Blair contended that the boundary lines established for the respective properties were found in the property deeds. The appellees claimed, however, that the boundary lines were established by an old, discernible fence line having wire that had grown into the trees and marked by bent axles.[3] Blair's sister, who resided on property located next to the Bishops, testified that the fence line had been in existence for at least 35 years. Appellees further testified that Blair had never occupied the disputed property and that the boundary lines had never previously been questioned during the existence of the fence line.

Several experts also testified at trial, giving different opinions regarding the boundary lines based upon conflicting surveys. Although the experts could not agree on the boundary lines based upon the deeds and surveys, they all opined that the fence was the best evidence of the boundary lines dividing the properties.

Based upon the trial evidence, the trial court ruled that the boundary lines dividing the parties' respective properties was "marked by a well established fence which is embedded in trees and marked by bent axles." The trial court further found that the appellees had acquired title to their respective properties by adverse possession.

(a) The trial court's decision regarding the boundary lines was authorized by the evidence presented at trial.

In all cases of disputed land lines, the following rules set forth in OCGA § 44-4-5 apply:

(1) Natural landmarks, being less liable to change and not capable of counterfeiting, shall be the most conclusive evidence; (2) ancient or genuine landmarks such as corner

---

[3] Blair acknowledged that a fence line existed on the property, but he claimed to have no knowledge as to whether it was built on the boundary lines.

stations or marked trees shall control the course and distances called for by the survey; (3) if the corners are established and the lines are not marked, a straight line as required by the plat shall be run but an established marked line, though crooked, shall not be overruled; and (4) courses and distances shall be resorted to in the absence of higher evidence. In determining what is an ancient landmark, OCGA § 44-4-6 states that "[g]eneral reputation in the neighborhood shall be evidence as to ancient landmarks of more than 30 years' standing."

(Punctuation omitted.) *Duncan v. Harcourt*, 267 Ga. App. 224, 226 (1) (599 SE2d 196) (2004).

All of the trial witnesses in this case, except for Blair and Rawlins, testified that the fence line established boundary lines between the properties at issue. The trial experts, including Rawlins's expert, also opined that the fence was the best evidence of the boundary lines between the properties. Blair's sister, an adjoining landowner, further testified that the fence line had been on the property for more than 35 years, and had always been on the property for as long as she had lived there. This evidence authorized the trial court's finding that the fence line was an ancient landmark that established the boundary lines for the properties. See *Sledge*, 276 Ga. App. at 783 (a); *Duncan*, 267 Ga. App. at 225-226 (1).

Rawlins's claim that the deeds and surveys to the property established the property boundaries is without merit.[4] The evidence established that although Blair's father had acquired approximately 70 acres of property according to his deed, he had subsequently conveyed almost 80 acres, which exceeded the amount that he had acquired under his deed. Moreover, the trial experts who reviewed the deeds and surveyed the property gave different opinions regarding the boundaries as set forth by the deeds' property descriptions and prior surveys. Based upon these inconsistencies and differing opinions, the trial court was authorized to determine that the boundaries were not ascertainable from the deeds.

Likewise, Rawlins's claim that her predecessor in interest, Blair, had paid the yearly taxes on the property affords no basis for relief.

---

[4] We note that Rawlins has attached several exhibits to their brief for consideration. But, "[a] brief or an attachment thereto cannot be used as a procedural vehicle for adding evidence to the record. We must take our evidence from the record and not from the brief of either party." (Citation and punctuation omitted.) *James v. Hosp. Auth. of the City of Bainbridge*, 278 Ga. App. 657, 660 (2) (629 SE2d 472) (2006).

"Payment of taxes is not, as contended, evidence of title and ownership." (Citation and punctuation omitted.) *Brown v. Williams*, 259 Ga. 6 (2) (375 SE2d 835) (1989).

(b) In light of our decision in Division 1 (a), affirming the trial court's determination of the boundary lines for the respective properties, Rawlins failed to present a valid claim to the disputed properties. Appellees' proper possession and title to the respective properties was established by the boundary lines, and therefore, we need not address the evidentiary sufficiency as to appellees' alternative adverse possession claims.

2. Rawlins further claims error on the ground that the trial court's written judgment differed from its oral ruling at the conclusion of the trial. Again, we discern no error.

> A trial court's oral pronouncement is not a judgment until it is put in writing and entered as the judgment. Although a trial court's oral pronouncements on the record may provide insight on the intent of its subsequent written judgment, discrepancies between the two pronouncements must be resolved in favor of the written judgment. Thus, the [trial] court's oral statements on the record were not binding.

(Citations omitted.) *In the Interest of L. H.*, 242 Ga. App. 659, 660 (2) (530 SE2d 753) (2000).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED MARCH 14, 2008 —
RECONSIDERATION DENIED APRIL 3, 2008 — ▮▮▮▮▮▮▮

Betty L. Rawlins, *pro se.*
*Joseph J. Saia, Stephen M. Kiser, Howard G. Slade, Melvin Drukman, George N. Sparrow, Jr.*, for appellees.